# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-1305V

|  |  |
|---|---|
| ALYSSA TANI,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: March 13, 2025 |

*Joseph Alexander Vuckovich*, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.

*Neil Bhargava*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On September 15, 2022, Alyssa Tani filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received to her left shoulder on October 11, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $50,000.00, for her actual pain and suffering, plus $428.42, for unreimbursable medical expenses, for a total of $50,428.42.

## I.   Procedural History

On December 27, 2023, I issued a ruling on entitlement in favor of Petitioner. ECF No. 32. But the parties were unable to agree on an appropriate amount to award Ms. Tani for her pain and suffering and unreimbursable expenses, and therefore agreed to brief the issue. ECF No. 41. On August 1, 2024, Petitioner filed her brief in support of damages ("Mot."), and Respondent filed a Response on September 3, 2024 ("Opp."). Petitioner filed a reply ("Reply") memorandum on September 16, 2024. ECF Nos. 42-44, 46. I heard arguments from both parties during a Motions' Day Damages hearing held on March 28, 2025.

## II.   Relevant Medical History

A complete recitation of the facts can be found in the Petition, declarations, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Ms. Tani was 30 years old at the time she received the flu vaccine in her left shoulder at a CVS pharmacy located in Philadelphia, Pennsylvania, on October 11, 2021. Ex. 1 at 1. Her past medical history is unremarkable for any type of left shoulder pain or dysfunction. *See e.g.*, Ex. 2.

In her declaration, Ms. Tani, who was employed as a nurse in a pediatric intensive care unit, stated that when she received the flu vaccine in her left shoulder, she felt that some was "wrong as I felt a strange twinge in my shoulder. . . only to see the needle too high up, near my shoulder joint rather than in the middle of my deltoid as the vaccine shoulder have been administered." Ex. 14 at 1. She stated that her arm pain got progressively worse over the next few hours. *Id*. at 2. Ms. Tani stated that "as the days went on, instead of the typical muscle soreness that gradually gets better, my shoulder pain progressively got worse." *Id*.

On October 27, 2021, 16 days after vaccination, Ms. Tani was seen by her chiropractor to address long standing neck and back issues. Ex. 3 at 65. Petitioner mentioned that her left shoulder had been sore since receiving a flu shot high on her shoulder. *Id.*

On October 28, 2021, Ms. Tani was seen by CRNP Joelle Koplin for a rheumatology follow up. Ex. 6 at 11, 15-16. Nurse Koplin noted that Petitioner began experiencing shoulder pain following a flu vaccination, which was muscular at first, but had become pain in the joints. *Id.* Petitioner reported that she had been taking ibuprofen two to three times a day without significant improvement. Ms. Tani was advised to begin topical diclofenac three to four times a day for two weeks and to return in the next two weeks for further imaging if there was no improvement. *Id.*

On November 30, 2021, Ms. Tani sent a message to Nurse Koplin complaining that in the past few days, her pain had become "significantly worse." Ex. 6 at 8. She described disrupted sleep, inability to lift objects, and inability to lift her arm above her head. *Id; see also* Ex. 14 ¶¶ 4-5. In response, Nurse Koplin ordered an MRI. *Id.*

On December 2, 2021, Ms. Tani completed a VAERS report in which she described "significant…pain" immediately upon administration of the vaccine, and that "the injection was paced too high on the arm above proper landmarks." Ex. 10 at 1. Describing her current condition, she wrote, "Pain is a sharp severe pain when lifting the arm above shoulder height affecting ADLs [activities of daily living], and pain with pressure and turning over, affecting sleep." *Id.*

On December 14, 2021, Ms. Tani underwent an MRI of her shoulder that revealed 1) "likely diffuse tearing" of the biceps tendon, 2) a possible "post-traumatic interstitial tear of the teres minor tendon and a mild strain of the teres minor muscle; and 3) moderate supraspinatus and mild infraspinatus tendinosis. Ex. 18 at 31.

On January 4, 2022, Ms. Tani was evaluated by orthopedist Dr. James Carey. Ex. 9 at 1. At this visit, she rated her pain 8/10 at its worst, with symptoms aggravated by reaching overhead. *Id.* The examination showed restricted range of motion ("ROM") although her strength measured as normal. *Id.* Neer's and Hawkins' impingement testing was positive. *Id.* Dr. Carey reviewed Petitioner's x-ray, which was normal. *Id.* Petitioner was prescribed physical therapy ("PT"), advised to apply ice daily and to let her pain dictate her daily activities. *Id.* at 2. Ms. Tani was instructed to follow up in 12 weeks. *Id.*

On January 19, 2022, Ms. Tani presented to physical therapist Megan McCreesh for an initial evaluation of her left shoulder. Ex. 4 at 6. Petitioner stated that she had a flu shot in October 2021, and that her pain was immediate. *Id*. Ms. Tani rated her pain at 7/10 at its worst, as well as disturbed sleep. *Id*. In addition to disturbed sleep, other functional impairments noted included an inability to reach across the body, impaired overhead reaching, and "pain during motions throughout the day." *Id.* at 9.

3

Ms. Tani attended an additional 10 PT visits between January 26, and May 9, 2022. Ex. 4 at 13, 16, 19, 22, and 25, Ex. 11 at 4-7. Upon discharge, on May 9, 2022, Petitioner rated her pain at 3/10, reporting that she still felt some pain the shoulder when making "sharp" movements. *Id*. at 5. Ms. McCreesh wrote,

> Upon physical examination today she demonstrates improvements in ROM and UE strength with only minor symptoms remaining. Functionally, she has returned to [prior level of function] with some "tightness" in functional [external rotation] positioning and some weakness noted in her exercise routine. She has demonstrated understanding of how to progress herself at home to continue to build strength in L shoulder. She has been educated to phone PT with any remaining questions.

*Id*.

Ms. Tani followed up with Dr. Carey, her orthopedist, on July 5, 2022. Ex. 9 at 3. She reported that her symptoms had improved by "approximately 95%" since her last visit. *Id.* Dr. Carey obtained x-rays, which were normal. *Id.* At this visit, examination showed limited internal rotation. *Id.* Neer's impingement test was minimally positive, and strength was normal. *Id. Id.* Hawkins' testing was negative. *Id.* Petitioner was instructed to ice, continue her home exercise plan, and return "as needed." *Id.* at 9.

In her most recent declaration (dated September 14, 2022), Ms. Tani explained the impact of her injury on her personal life: "[w]hile my shoulder finally feels about 95% better, I am still trying to recover from the anxiety and weight gain that this vaccine injury caused…I am reminded during the 5% of the time my shoulder still hurts of the worst of it." Ex. 14 ¶ 11. In her updated statement, executed May 14, 2024, Ms. Tani stated that she "was never able to return 100% back to baseline." Ex. 21 at 1. As of this date, she reported that she was still performing at-home therapy exercises. *Id.* Ms. Tani added, "[t]o this day, I still experience sharp pain in my left shoulder with daily normal arm movements, discomfort sleeping, inability to enjoy the workouts I once enjoyed and a constant daily reminder of my injury." *Id.* Her friend, Hannah Bracale, who lived with her from March-August 2022, corroborates many details of her account. Ex. 22 at 1. Ms. Bracale states that as of May 17, 2024 (when she signed her statement), Petitioner "still experiences intermittent pain, including pain which limits her inability to exercise." *Id.*

### III.     The Parties' Arguments

#### a. Petitioner

In her brief, Ms. Tani explained that she suffered a SIRVA for which her treatment included multiple physician appointments (including two orthopedist appointments), an MRI, an x-ray, 11 physical therapy sessions, at least eight chiropractic appointments at which her shoulder pain was mentioned, and at least two years of home physical therapy exercises. Mot. at 8. She stated that the total duration of her pain and suffering was at least from October 11, 2021, to May 17, 2024 (the date of Ms. Bracale's declaration) – approximately two years and seven months. *Id.* at 8-9. Ms. Tani stated that the evidence reflects that she suffered "significant impairment in activities of daily living for much of this time, particularly during the first 6-7 months of her injury." Id. at 9. She stated that based on the facts and circumstances of her case, she is entitled to an award of $63,500.00 in past pain and suffering and $918.42, for her out-of-pocket expenses. *Id*.

Petitioner cited to three cases in support of her claim for past pain and suffering: (1) *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 at *10 (Fed. Cl. Spec. Mstr. Nov. 6, 2019), (2) *Foster v. Sec'y of Health & Human Servs.*, No. 21-0647V, 2024 WL 1073009 at *10 (Fed. Cl. Spec. Mstr. Feb. 6, 2024), and (3) *Aponte v. Sec'y of Health & Human Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sep. 2, 2022). Petitioners were awarded $65,000.00, $60,000.00, and $60,000.00, respectively, for their past pain and suffering in those cases.

#### b. Respondent

Respondent has argued that the cases cited by Petitioner to support her request of $63,500.00 in pain and suffering "are all distinguishable in terms of the severity of the pain and injury that petitioners suffered, the time at which treatment was initially sought, the extent of the corresponding treatment plan, and the duration of symptoms," and thus, a lower damages amount is justified. Opp. at 6. Respondent argued that Petitioner's injury was limited in terms of both pain and durational impact, and that by six-and-a-half-months post vaccination, she was regularly participating in exercise and sporting activities. *Id.* at 5. Respondent noted that by July 5, 2022, eight-and-a-half-months post vaccination, Petitioner's symptoms were "effectively resolved, with the orthopedist noting that petitioner's left shoulder had a full ROM, no swelling, no tenderness, and good strength." Opp. at 6. Respondent noted that Petitioner's treatment was conservative, consisting of one MRI, one Medrol Dosepak, 11 PT sessions, specialist consultations and adherence to a home exercise program (HEP).

Respondent argues that the pain and suffering awards in the two cases he cites, *Ramos v. Sec'y of Health & Human Servs.*, No. 18-1005V, 2021 WL 688575 (Fed. Cl. Spec. Mstr. Jan. 4, 2021), and *Merwitz v. Sec'y of Health & Human Servs.*, No. 20-1141V, 2022 WL 17820768, at *8 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) are the more appropriate comparable cases, and that Petitioner should be awarded a sum within this range. The petitioners in these two cases were awarded $40,000.00 and $50,000.00, respectively for their pain and suffering. *Id*.

### IV.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would

use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V.  Appropriate Compensation in this SIRVA Case

#### a. Awareness of Suffering

Neither party disputes that that Ms. Tani had full awareness of her suffering, and I find that fact is supported by the record evidence.

#### b. Severity and Duration of Pain and Suffering

As I noted during the hearing, Ms. Tani's case is a SIRVA injury that did not require surgical intervention. Thus, we are below a six-figure award for Ms. Tani's pain and suffering, absent extraordinary circumstances. The amounts awarded in the two cases cited by Respondent, *Ramos,* 2021 WL 688575 (Fed. Cl. Spec. Mstr. Jan. 4, 2021) and *Merwitz*, 2022 WL 17820768, are too low, especially given that in both cases, the petitioners delayed reporting their shoulder pain by three to four months. In contrast, Ms. Tani, did not delay reporting. However, in all the cases cited by Petitioner, those petitioners clearly had more severe injuries and more treatment. For example, in *Dagen,* 2019 WL 7187335, the petitioner received a steroid injection to treat her shoulder pain. In addition, the *Dagen* petitioner received not one, but two vaccines in her injured shoulder, unlike Ms. Tani who only received a flu vaccine in her injured shoulder. Thus, the $65,000.00 awarded to the Petitioner in *Dagen* is too high an award to be considered for Ms. Tani.

*Foster v. Sec'y of Health & Human Servs.*, No. 21-0647V, 2024 WL 1073009 at *10 (Fed. Cl. Spec. Mstr. Feb. 6, 2024) is a little bit of a better comparable, but not much. In *Foster,* the petitioner received a steroid injection and was a very busy mother of four children. She also coached volleyball and was a horse trainer – jobs that were affected by her injury. At the end of her eight-month treatment time, she had an objective rating of continued impairment of 11%. This factor is not present in Ms. Tani's case. In *Aponte v. Sec'y of Health & Human Servs.*, No. 20-1031V, 2022 WL 4707180 (Fed. Cl. Spec. Mstr. Sep. 2, 2022), it was recommended that the petitioner receive a steroid injection and additional PT, although she declined – a difference in the two cases. Thus, a lower amount for Ms. Tani is warranted.

That said, the cases cited by Respondent that are closer to the lower end of the range – between $40,000.00 and $50,000.00 appear to be good comparable cases.

7

Because Ms. Tani's case is a case involving very conservative treatment, i.e., an eight-month treatment course, no steroid injections, and only physical therapy and medication, I do find that an award on the lower end of the range proposed by Respondent is more appropriate. Based on all of the circumstances and evidence submitted, and in the interest of rough justice, I find that her past pain and suffering warrants an award of $50,000.00.

### c. Unreimburseable expenses

Petitioner requests $918.42 in out-of-pocket expenses, including $883.67 in medical costs and $34.75[3] in mileage. Of the medical costs, Petitioner requests to be reimbursed for 14 chiropractic appointments she attended between January 3, 2022, and September 7, 2022. Opp. at 9-10; Ex. 25 at 1. Petitioner has argued that "[g]iven that Ms. Tani's post-vaccination chiropractic appointment notes include references to upper extremity pain, it is reasonable to infer that the treatment provided was meant to address this issue, along with the other complaints listed." Reply at 9. Respondent objected to these costs, arguing that Petitioner's chiropractic appointments were not for the purposes of treatment of her shoulder, and that Petitioner did not actually receive treatment on her shoulder at these appointments. Opp at 9-10.

Given the ambiguity of these chiropractic records which simply mention Ms. Tani's left shoulder complaints and do not include any mention of the shoulder in the treatment portion of the notes, I find it too speculative to assume that she was actually treated for her shoulder during these visits and will deny these costs. Thus, Petitioner will only be awarded a total of $428.42 for her unreimbursed expenses, which do not include the costs for the 14 chiropractic appointments ($35 per visit/14 visits = $490.00) claimed (Ex. 25 at 8).

### CONCLUSION

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $50,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[4] I also find that Petitioner is entitled to $428.42, in actual unreimbursable expenses.**

---

[3] Respondent disagrees with application of the business rate and believes the medical mileage rate better reflects the "actual expenses" that have resulted from the vaccine injury. Opp. at 9, fn. 2. However, given the *de minimis* mileage reimbursement requested here, Respondent does not contest Petitioner's mileage reimbursement request of $34.75. *Id.*

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-

**Accordingly, I award Petitioner a lump sum payment of $50,428.42, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.